# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1746

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Northern |
| | * | District of Iowa. |
| Miguel Carrillo, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 9, 2004
Filed: August 25, 2004

_____

Before MURPHY, HEANEY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Miguel Carrillo appeals the district court's[1] denial of a two-level downward safety-valve adjustment and the assessment of a two-level upward adjustment for obstruction of justice. We affirm.

## I. *Background*

Police arrested Carrillo and Melvin Fluhr on March 28, 2002, after the two sold one-half pound of methamphetamine to an undercover officer. After his arrest, Fluhr

_____

[1] The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

gave the police a voluntary confession and made statements regarding Carrillo's involvement in the drug sale. Carrillo received conditional pre-trial release. During his release, police again arrested Carrillo for possession of 108.62 grams of methamphetamine.

Prior to trial, Carrillo and two other men assaulted Fluhr in jail in an alleged attempt to prevent Fluhr from testifying against Carrillo. One inmate held Fluhr in Carrillo's cell while Carrillo and the other man attacked Fluhr. The jail's security video camera recorded part of the assault. Carrillo threatened Fluhr's family should Fluhr testify against him. Carrillo and the other inmates were charged with the assault.

On July 25, 2002, Carrillo pleaded guilty to possession with intent to distribute methamphetamine while on pre-trial release. Prior to sentencing, Carrillo contested the facts in the presentence investigation report ("PSR") and the plea agreement's stipulation of facts regarding the prison assault. The stipulation of facts contained not only the factual basis for the drug charge, but a summary of the jail fight perpetrated by Carrillo. Paragraph H, which detailed the jail fight, was marked through in the stipulation of facts. However, prior to sentencing, Carrillo submitted a sentencing memorandum that indicated that he admitted to the conduct at the jail, but that he continued to claim that he was eligible for the safety-valve adjustment to his sentence.[2] In addition, at sentencing, Carrillo withdrew his objection to the proposed stipulated facts. Specifically, the district judge asked, "So, Mr. Carrillo, you're no longer saying you didn't do what's in the stipulation of facts, is that fair?" Carrillo

_____

[2] The government filed a motion to supplement the record on appeal to include Carrillo's sentencing memorandum, which was omitted from the record. This memorandum, filed by Carrillo's attorney, indicates that Carrillo only challenged whether the jail assault was connected to the charged offense for purposes of the safety-valve adjustment. We hereby grant the government's motion to supplement the record on appeal.

answered, "Yeah." The district judge clarified by asking, "You're admitting that you did it?" Carrillo again answered, "Yeah." The only disputed issue during sentencing continued to be whether Carrillo was eligible for the safety-valve adjustment. His eligibility turned on whether his attack on Fluhr constituted obstructionist conduct or conduct connected to the underlying drug offense. The district court denied the safety-valve adjustment and sentenced Carrillo to 210 months' imprisonment and four years' supervised release.

## II. *Analysis*

As a preliminary matter, we address Carrillo's argument first raised in his reply brief.[3] Carrillo contends that he objected to the facts supporting the obstructionist conduct–the jail fight–before sentencing and that he did not stipulate to these facts in his plea agreement. Thus, he argues, these matters were preserved. However, as noted, Carrillo filed a prehearing sentencing memorandum that indicated that he admitted to the conduct at the jail, but that he continued to claim that he was eligible for the safety-valve adjustment to his sentence. Thereafter, Carrillo conceded at the sentencing hearing that he no longer objected to the proposed stipulated facts in the plea agreement–which included paragraph H's summary of the assault on Fluhr. In addition, Carrillo's counsel indicated at sentencing that Carrillo conceded to the conduct, but not to whether it constituted conduct "in connection with the offense." Although this series of objections and concessions is somewhat convoluted, our review indicates that Carrillo's concessions in his prehearing sentencing memorandum and during the sentencing hearing render moot any fact issue regarding his involvement in the jail fight. We will instead address the legal issue of whether

---

[3] Typically, absent some reason for failing to raise an argument in an opening brief, we do not consider an argument first raised in a reply brief. *United States v. Darden*, 70 F.3d 1507, 1549 n.18 (8th Cir. 1995). Carrillo has offered no justification for his failure to raise these issues in its initial brief; consequently, we can choose not to review it. *United States v. Brown*, 108 F.3d 863, 867 (8th Cir. 1997). However, we briefly address his claims here for clarity.

Carrillo's conduct affects his eligibility for sentence adjustments under the Guidelines.

A. *Obstruction of Justice*

Carrillo first argues that the district court erred in applying a two-level increase for obstruction of justice based on Carrillo's physical assault of Fluhr to prevent him from testifying against Carrillo. Carrillo asserts that the government failed to prove that he willfully attempted to obstruct or impede the administration of justice. The government responds that a person's intent can be inferred from his voluntary actions, and that Carrillo's attack on Fluhr, combined with his threat regarding Fluhr's family, clearly demonstrated Carrillo's intent to willfully obstruct justice.

In considering an obstruction of justice sentencing issue, we typically review the district court's factual findings for clear error, and its application of the Guidelines de novo. *United States v. Plumley*, 207 F.3d 1086, 1090 (8th Cir. 2000); *United States v. Hunt*, 171 F.3d 1192, 1195 (8th Cir. 1999). However, the government asserts that Carrillo failed to object to the increase at sentencing because he admitted to the conduct and agreed that he was subject to the two-level increase. Therefore, the government argues that we should review the matter for plain error. Under the plain error standard of review, Carrillo would have to show a plain error that affects his substantial rights. *United States v. Cook*, 356 F.3d 913, 919 (8th Cir. 2004)*; United States v. Collins*, 340 F.3d 672, 682 (8th Cir. 2003). If he can make such a showing, we have "discretion to correct a forfeited error if 'the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id*. (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). Given the record before us, we find that the district court did not err in assessing a two-level increase for obstruction of justice under either standard of review.

A two-level increase in a defendant's offense level is appropriate if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the

administration of justice during the . . . prosecution, or sentencing of the instant offense." United States Sentencing Guidelines ("U.S.S.G.") § 3C1.1. The Guidelines describe obstructive behavior as "threatening, intimidating, or otherwise unlawfully influencing a . . . witness . . . directly or indirectly, or attempting to do so." *See id.*, application note 3(a), (i); 18 U.S.C. § 1512(b)(1), § 1512(b)(2)(A). "'An attempt to intimidate or threaten a witness, even if unsuccessful, is sufficient to sustain a two-level enhancement for obstruction of justice.'" *United States v. Vaca*, 289 F.3d 1046, 1049 (8th Cir. 2002); *United States v. Thompson*, 210 F.3d 855, 861 (8th Cir. 2000); *United States v. Moss*, 138 F.3d 742, 746 (8th Cir. 1998)). Under U.S.S.G. § 3C1.1, the defendant must have "willfully" obstructed justice, which requires that he knew that he was under investigation or had "'a correct belief that an investigation [was] probably underway.'" *Brown v. United States*, 169 F.3d 531, 536 (8th Cir. 1999) (quoting *United States v. Oppedahl*, 998 F.2d 584, 586 (8th Cir. 1993)).

In *Thompson*, for example, the evidence showed that the defendant intimidated two prosecution witnesses. Prior to trial, the defendant telephoned one witness and demanded that he swear on the lives of his children that he had not cooperated with authorities. The defendant also warned the witness that he could expect a visit from him once he was released from prison. At trial, the defendant directed similar threats to the other witness, calling the witness derogatory names and making a throat-cutting gesture while the witness testified. The district court interpreted these acts as attempts to impermissibly influence or intimidate a witness under § 3C1.1, and we determined that the district court did not clearly err. *Thompson*, 210 F.3d at 861; *See also Moss*, 138 F.3d at 745–46 (finding defendant's "cutthroat" gesture to witness during trial was obstruction of justice); *United States v. Nunn*, 940 F.2d 1128, 1133 (8th Cir. 1991) (finding a telephone threat made to a potential witness constituted obstruction of justice).

The district court specifically found that Carrillo's assault on Fluhr–who had furnished evidence against Carrillo and, at the time of the attack, was scheduled to

testify against Carrillo–occurred in the course of attempting to avoid responsibility for the offense. The district court also determined that Carrillo used violence or credible threats of violence in connection with the offense. Given these facts, whether reviewed for clear error or plain error, we hold that the district court did not err in assessing a two-level increase for obstruction of justice under U.S.S.G. § 3C1.1.

## B. *Safety-Valve Reduction*

Carrillo next argues that the district court erred in denying the two-level downward safety-valve adjustment in U.S.S.G. § 5C1.2. He asserts that the court erred in determining that his jailhouse attack on Fluhr was "in connection with" the charged crime and that he was attempting to avoid responsibility for the drug crime by threatening, attacking, and intimidating Fluhr. Carrillo concedes that if the attack was an attempt to avoid responsibility for the drug offense, the court's denial of the reduction was correct. Carrillo asserts, however, that his attack on Fluhr occurred because he "reacted criminally out of anger" rather than because he was attempting to avoid responsibility. The government responds that Carrillo failed to prove that the assault was not "in connection with" his drug offense. The government asserts that because Carrillo's attack "obstructed justice," he cannot meet the requirements of the safety-valve provision. The government further notes that even if Carrillo's attack arose from a spontaneous burst of anger, it was still in an attempt to dissuade Fluhr from testifying, as evidenced by Carrillo's threat against Fluhr's family.

The safety-valve provision permits a court to impose a sentence without regard to a statutory minimum if certain conditions are met. A defendant seeking relief under the safety valve has the burden to show that each condition of the statute has been satisfied. *Wright v. United States*, 113 F.3d 133, 134 (8th Cir. 1997). The standard of review for such a finding is clear error. *United States v. Quintana*, 340 F.3d 700, 702 (8th Cir. 2003); *United States v. Tournier*, 171 F.3d 645, 647 (8th Cir. 1999).

Sentencing Guideline § 5C1.2 and 18 U.S.C. § 3553(f) establish five criteria that a defendant must meet to be entitled to the safety-valve reduction, including:

(1) The defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of 4A1.3 (Departures Based on Inadequacy of Criminal History Category);

(2) The defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) The offense did not result in death or serious bodily injury to any person;

(4) The defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

(5) Not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 5C1.2.

The parties agree that Carrillo met four of the five criteria. However, they dispute whether he met the second provision for using "violence or credible threats of violence . . . (or induce another participant to do so) in connection with the offense."

The term "offense," as used in subsections (a)(2), (3), and (4), and "offense or offenses that were part of the same course of conduct or of a common scheme or plan," as used in subsection (a)(5), mean the offense of conviction and all relevant conduct. U.S.S.G. § 5C1.2 cmt. n.3. Furthermore, Guideline § 1B1.3 notes that "relevant conduct" includes:

> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, **or in the course of attempting to avoid detection or responsibility for that offense** . . . .

(Emphasis added.) Pursuant to these provisions, because Carrillo's conduct qualified as an attempt "to avoid detection or responsibility for that offense" (i.e. threatening and attacking a witness to dissuade him from testifying at trial against the defendant), that same conduct would also apply to defeat a request for a safety-valve reduction. As such, we conclude that the district court did not clearly err in denying a safety-valve reduction to Carrillo.

For the foregoing reasons, we affirm the district court's judgment.

_____