# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1527

_____

United States of America,　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　Plaintiff - Appellee,　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　v.　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　*
Pablo S. Marquez,　　　　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　Defendant - Appellant.　　　　　*

_____　　　　　Appeals from the United States
　　　　　　　　　　　District Court for the
No. 06-1528　　　　　Western District of Missouri.

_____

United States of America,　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　Plaintiff - Appellee,　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　v.　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　*
Gustavo T. Luna,　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　Defendant - Appellant.　　　　　*

_____

Submitted: June 13, 2006
Filed: September 11, 2006

_____

Before LOKEN, Chief Judge, ARNOLD, Circuit Judge, and DOTY,[*] District Judge.
_____

LOKEN, Chief Judge.

After a three-day trial, the jury convicted Pablo Marquez and Gustavo Luna of possession with intent to distribute 1,866 kilograms of marijuana found by the Missouri State Highway Patrol hidden in a commercial trailer Marquez and Luna were driving from El Paso, Texas, to New Haven, Michigan, ostensibly to deliver a load of insulation material. Marquez and Luna appeal their convictions, arguing there was insufficient evidence that they knowingly possessed the well-hidden marijuana. Luna further argues that the district court[1] abused its discretion in admitting evidence of his prior drug conviction. We affirm.

## I. Sufficiency of the Evidence

Rick Talbert, an experienced Commercial Vehicle Officer of the Missouri State Highway Patrol, stopped a tractor-trailer rig driven by Marquez because it displayed the name of a trucking company, Classic Transportation, that Talbert did not recognize. The other driver, Luna, was asleep in the truck's berth. Marquez told Talbert they were delivering a load of insulation from El Paso, Texas, to New Haven, Michigan. Talbert noted inconsistencies in the information recorded in their driver log books and in the bill of lading they provided. Marquez's log book said that he should be in the sleeper berth, not Luna. It also said the load originated in El Paso on July 22, whereas the bill of lading, signed by "Mr. Reed," recited that the load originated in Tucson, Arizona, on July 20. Marquez said Reed had driven the load

_____

[*]The HONORABLE DAVID S. DOTY, United States District Judge for the District of Minnesota, sitting by designation.

[1]The HONORABLE RICHARD E. DORR, United States District Judge for the Western District of Missouri.

-2-

from Tucson to El Paso. The bill of lading did not contain the carrier's phone number, which was unusual, and Marquez and Luna could not provide a phone number to contact their purported employer. Marquez told Talbert the load weighed 17,000 pounds; the bill of lading listed 28,500 pounds. Talbert also noted the trailer was sealed with a standard seal that can be purchased at any truck stop.

Lacking arrest authority and suspecting criminal activity, Talbert called for assistance. After Sergeant Jack McMullin arrived, Marquez consented to a search of the trailer, which he said was loaded and sealed before he took possession. When the officers broke the seal and opened the trailer door, they smelled marijuana but could not climb over the insulation to investigate. A drug dog was summoned and alerted on the trailer. The officers then took it to a warehouse where they found 1,866 kilograms of marijuana in 250 cellophane-wrapped bundles in a homemade sheetrock box that covered the front half of the trailer. This prosecution followed.

As Marquez and Luna were indisputably in possession of a distribution quantity of marijuana, the issue at trial was whether they knew the marijuana was hidden in the trailer, or were merely innocent couriers. In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, giving the government the benefit of all reasonable inferences that may be drawn. We must uphold the conviction "unless no reasonable jury could find the defendants guilty." United States v. Mendoza-Larios, 416 F.3d 872, 873 (8th Cir. 2005).

Much of the government's evidence at trial focused on the bill of lading. The government proved that the listed shipper was a non-existent company in Tucson and that the listed consignee was a non-existent company at a non-existent address in New Haven, Michigan, near Detroit. No representative of the carrier signed the bill of lading. Mr. Reed signed for the shipper without providing a first name, which Officer Talbert had never encountered. Ronald Rodrigues, the owner of Classic Transportation, the carrier listed on the bill of lading, testified for the government that

it was not his trailer and that Marquez and Luna were not Classic drivers. Rodrigues noted that the bill of lading did not record that the load had traveled from Tucson to El Paso or who was responsible for the load after Reed relinquished it. Rodrigues explained that Classic's cargo insurer requires that bills of lading reflect when one driver surrenders possession to another. Thus, to Rodrigues, the bill of lading presented to Officer Talbert indicated either that the load never left Tucson, or that Reed was driving the load to its Michigan destination. On the other hand, a trucker who previously employed Marquez testified that he was a law-abiding driver and that drivers often do not sign the bill of lading when they pick up a load.

The government's trial evidence included the inconsistent statements in Marquez and Luna's log books and inaccuracies and inconsistencies in their statements to Officer Talbert when stopped. Marquez said he was driving for Classic Transportation and picked up the trailer at Classic's yard in El Paso, but Classic does not operate a yard in El Paso. The telephone numbers provided to Officer Talbert did not connect to any identifiable party. Officer Talbert also testified to a statement made by Marquez suggesting that he put the spare tire inside the trailer before it was sealed, which would have exposed Marquez to the palpable scent of marijuana. A DEA agent testified that the large quantity of marijuana had a street value of nearly $10 million in Detroit and opined that a drug dealer was not likely to entrust such a valuable load to two unwitting drivers.

Marquez testified in his own defense; Luna did not. Marquez testified that the tractor-trailer was owned by Jesus Barrera of El Paso, Texas (a fact confirmed by Missouri authorities). Marquez met Barrera two months earlier and made three prior cross-country trips without incident. Marquez testified that the shipment originated in Tucson and was driven to El Paso by a Mr. Reed, whom Marquez never met. Marquez picked up the sealed trailer at Barrera's yard in El Paso and picked up Luna, his second driver, thirty minutes later at a local truck stop. The two then drove from El Paso until stopped by Officer Talbert.

-4-

Marquez testified that the false entries in their log books were inadvertent. The false bill of lading was provided by Barrera and did not arouse Marquez's suspicion because the carrier's name,"Classic Transportation," was stamped on the side of the tractor. Marquez denied telling Officer Talbert he had *seen* the spare tire in the trailer; he simply assumed it was inside because the trailer had no spare tire rack. Rodrigues corroborated a portion of this defense when he testified that Barrera drove for Classic Transportation some months before this shipment, and that Rodrigues was then unable to locate Barrera to verify that he had stopped using Classic's name and signage. On the other hand, Marquez did not disclose that he was hired by Barrera when questioned about the trip by Officer Talbert.

In arguing the evidence was insufficient, Marquez and Luna rely on our decisions in Mendoza-Larios, 416 F.3d 872, and in United States v. Pace, 922 F.2d 451 (8th Cir. 1990). In Mendoza-Larios, two normal-acting motorists were convicted of possession with intent to distribute eight kilograms of cocaine carefully hidden in the airbag compartment of another person's car they were driving. We reversed the convictions, concluding that the government failed to prove knowing possession. In Pace, a divided panel reversed a possession-with-intent-to-distribute conviction because the government failed to prove that the defendant, who was hired to drive a car to Chicago for $250, knew about the cocaine concealed in his passenger's luggage. In responding that the evidence was sufficient to convict Marquez and Luna, the government relies on United States v. Sanchez, 252 F.3d 968 (8th Cir. 2001), where we upheld the conviction of a nervous truck driver who lied about his recent travels, apparently wrote the false bill of lading, was sitting next to materials used to construct the hidden drug compartment, and was implausibly hauling a half-empty truck of refrigerated produce across the country in November.

Weighing the sufficiency of the evidence is a fact-intensive task. Prior cases are instructive but are seldom if ever controlling. Here, while the government's evidence was not as compelling as in Sanchez, it was sufficient to convict. It is

significant, in our view, that Marquez and Luna were licensed commercial truck drivers purportedly engaged in interstate motor carrier transportation. In this heavily regulated industry, it is particularly suspicious for experienced truck drivers to be traveling under a false bill of lading while maintaining false log books and disclaiming any knowledge of what had been loaded into their trailer and by whom.[2] The innocent courier defense is inherently less plausible for commercial truck drivers transporting a bulky, $10 million load of marijuana than for the defendants in Mendoza-Larios and Pace, who transported lesser quantities of cocaine that were well hidden in other people's cars. When combined with the other evidence of inconsistent statements to Officer Talbert and Sergeant McMullin and Marquez's knowledge of the spare tire (which the jury was entitled to credit), as well as the defense's failure to produce corroborating testimony from the mysterious Barrera and Reed, we conclude that a reasonable jury could find Marquez and Luna guilty of knowing possession of a distribution quantity of marijuana. The district court did not err in denying their motions to acquit.

## II. Luna's Prior Conviction

Luna argues that the district court abused its discretion in admitting evidence of his eleven-year-old prior conviction for possession with intent to distribute marijuana. The district court admitted the conviction under Rule 404(b) of the Federal Rules of Evidence but gave a limiting instruction that the jurors may consider this evidence only to prove knowledge and intent, not whether Luna was guilty of the charged offense. We reverse a district court's admission of evidence under Rule 404(b) "only when such evidence clearly had no bearing on the case and was

---

[2]The bill of lading is a document of title that evidences the carrier's lawful possession of the goods and establishes its rights and duties respecting the goods. See U.C.C. §§ 1-201(15)-(16), 7-301 to -309. For the significance of accurate log books, see United States v. McCord, Inc., 143 F.3d 1095 (8th Cir. 1998).

introduced solely to prove the defendant's propensity to commit criminal acts." United States v. Thomas, 398 F.3d 1058, 1062 (8th Cir. 2005) (quotation omitted).

We have frequently upheld the admission of prior drug convictions to show knowledge and intent when the defendant denied the charged drug offense. See, e.g., United States v. Foster, 344 F.3d 799, 801-02 (8th Cir. 2003), cert. denied, 541 U.S. 1031 (2004). Without citing Eighth Circuit precedent, Luna argues that his prior conviction was too remote in time. In this circuit, time is a relevant factor, but the remoteness standard is reasonableness, not an absolute number of years. Here, as in United States v. Love, 419 F.3d 825, 828 (8th Cir. 2005), it was well within the district court's discretion to rule that this "very similar" prior conviction was not overly remote, and that its probative value was not substantially outweighed by the danger of unfair prejudice.

The judgments of the district court are affirmed.

_____