# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-2970

———————

United States of America,

    Plaintiff - Appellee,

v.

Khalat Jamalthaeal Alama,

    Defendant - Appellant.

Appeal from the United States
District Court for the
District of Nebraska.

———————

Submitted: January 9, 2007
Filed: May 23, 2007

———————

Before LOKEN, Chief Judge, BYE and SHEPHERD, Circuit Judges.

———————

LOKEN, Chief Judge.

A jury convicted Khalat Jamalthaeal Alama of conspiring to distribute and possess with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841 and 846. Alama appeals, challenging the sufficiency of the evidence and arguing that the admission of evidence seized during a warrantless search of his residence violated the Supreme Court's recent decision in <u>Georgia v. Randolph</u>, 547 U.S. 103, 126 S. Ct. 1515 (2006), and that the district court[1] erred in admitting the plea agreements of cooperating government witnesses. We affirm.

———————

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

## I. Sufficiency of the Evidence

Alama argues that the government failed to prove the elements of a conspiracy offense, namely, "that: (1) a conspiracy existed for an illegal purpose; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly joined in it." United States v. Tensley, 334 F.3d 790, 794 (8th Cir. 2003).  More particularly, he argues that the government proved no more than a series of "mere sales agreements" between Alama and the government's cooperating witnesses, the deficiency in proof that caused us to reverse the conspiracy conviction in United States v. West, 15 F.3d 119, 121 (8th Cir. 1994).  We reject a challenge to the sufficiency of the evidence if the record, viewed most favorably to the government, contains evidence sufficient to prove the elements of the crime beyond a reasonable doubt.  See United States v. Lopez, 443 F.3d 1026, 1030 (8th Cir. 2006) (en banc).  A conspiracy may be proved by direct or circumstantial evidence.  Tensley, 334 F.3d at 794.

The government's main witness was Satar Alkafaji, a fellow Iraqi with whom Alama lived at times during the alleged conspiracy.  Alkafaji first admitted that he pleaded guilty to a charge that he conspired to distribute methamphetamine.  He then testified that, beginning in early 2004, he allowed Alama to sell methamphetamine, initially a few grams at a time and later in larger quantities.  Alkafaji accompanied Alama on his first large sale but thereafter did not supervise Alama, require pre-payment for the drugs, or meet Alama's customers because "we were building a relationship and the confidence and trust was strong."  Alkafaji testified that he and Alama shared a cell phone for their drug related activity, and that customers called and dealt with either of them.  Alkafaji also testified that he took Alama to meet Alkafaji's methamphetamine source in Grand Island, Nebraska.

The government also introduced testimony by various methamphetamine customers of Alkafaji and Alama.  Chadwick Walters testified that he bought ounces and half-ounces from Alama six to eight times.  Teresa Jones testified she bought half-

ounce and ounce quantities of methamphetamine from Alama and Alkafaji for resale and personal use. Joshua Love and Daniel Zeiger bought methamphetamine from Alama and Alkafaji. Alama testified in his own defense that he occasionally used methamphetamine, once with Alkafaji. But he denied buying methamphetamine from Alkafaji, selling methamphetamine to anyone, or knowing Walters and Zeiger.

Viewing the evidence in the light most favorable to the jury verdict, as we must, we conclude that the government's evidence was more than sufficient to prove a conspiracy between Alama and Alkafaji to distribute methamphetamine. Our later cases make clear that West was a narrow ruling that has no application to the facts of this case. See United States v. Bewig, 354 F.3d 731, 735-36 (8th Cir. 2003); United States v. Cabrera, 116 F.3d 1243, 1247 (8th Cir. 1997). Moreover, Alama neither proffered an instruction based on the mere-sales-agreement principle nor suggested this defense theory to the jury at trial. See United States v. Montano-Gudino, 309 F.3d 501, 505 (8th Cir. 2002); United States v. Hester, 140 F.3d 753, 757 (8th Cir. 1998). In addition to relying on West, Alama argues that the government's cooperating witnesses were not credible because they were convicted felons whose plea agreements gave them a strong motive to lie to obtain sentencing relief. However, credibility determinations are for the jury and are virtually unassailable on appeal. See United States v. Enriquez, 201 F.3d 1072, 1074 (8th Cir. 2000).

## II. The Georgia v. Randolph Issue

Following his indictment and arraignment, Alama was released on bond. An arrest warrant issued when he violated the terms of release, and he was seen at the home of Jane Snelling, who lived with her two daughters and her niece, Alama's girlfriend, Nicole Delgado. U.S. Marshals went there to arrest him, accompanied by local law enforcement officers. The officers knocked on the door, announced their purpose, and ordered everyone out of the house. Snelling, her daughter, and Delgado emerged and were taken across the street, where Snelling consented to a search of her

home and signed a written consent form. Surveillance continued, and some time later Alama came out of the house and was taken into custody. The officers then searched the home, finding methamphetamine and marijuana, drug paraphernalia, a digital scale, and numerous plastic baggies in the bedroom where Alama had been living with Delgado and in a nearby toilet.

Alama filed no pretrial motion to suppress this evidence. At trial, Snelling and the officer who obtained her consent to search briefly described the above sequence of events. The government then called Officer Forrest Dalton, who conducted the search and took custody of the seized contraband. After laying foundation, the government offered three physical exhibits Dalton identified as comprising the contraband. Defense counsel objected based upon a Supreme Court decision "just before we started this trial," a reference to Georgia v. Randolph. After a brief colloquy outside the presence of the jury, the objection was clarified:

> THE COURT: I understand you to be objecting to the degree that your client has a Fourth Amendment right.
>
> MR. GOOCH [defense counsel]: Yes.
>
> THE COURT: And you assert that it's a logical extension of the Supreme Court's recent decision to say that you've got to get consent of guests in a home in a circumstance such as this.
>
> MR. GOOCH: Yes.
>
> THE COURT: And now having made that objection, it is denied . . . I don't think that's what the [Supreme] Court intended.

On appeal, Alama argues that the district court erred in admitting this evidence because Randolph required the police to obtain the consent of Alama as well as

Snelling, the primary occupant, before searching the portion of the house where Alama was living and the contraband was found. We disagree.

Prior to Randolph, the Supreme Court held that the police may conduct a warrantless search with the consent of an occupant who they reasonably believe has common authority over the property even if a co-occupant later objects. See Illinois v. Rodriguez, 497 U.S. 177 (1990); United States v. Matlock, 415 U.S. 164 (1974). In Randolph, the Court considered whether this principle applied when both co-occupants were present and the police conducted a warrantless search based on the consent of one despite the other's express refusal to consent. The Court held that this search violated the Fourth Amendment. To reconcile its holding with Rodriguez and Matlock, the Court expressly drew "a fine line," 126 S. Ct. at 1527:

> if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out.

This case obviously falls on the Rodriguez and Matlock side of the line. The police knocked on Snelling's door for the purpose of executing the arrest warrant. Alama did not come to the door and object to a search of the house. Instead, he disobeyed the officers' command that everyone come out of the house and remained hidden inside until, he later testified, his lawyer urged him by telephone to give himself up. Up to this point, Alama was like the sleeping co-occupant whose consent to search was not constitutionally required in Rodriguez, 497 U.S. at 180. By the time Alama finally emerged from the house, Snelling had consented to the search and Alama was arrested and removed from the scene. At this point, he was like the co-occupant under arrest in a nearby squad car whose consent to search was not required in Matlock, 415 U.S. at 166-67.

Alama argues that <u>Randolph</u> was nonetheless violated because the Supreme Court stated that its bright-line test would not apply if there is "evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a potential objection." 126 S. Ct. at 1527. Here, he argues, the police knew he was physically present and would have objected to the search if asked. Having "ample opportunity to obtain Alama's consent," the police instead obtained Snelling's consent and then waited until Alama left the residence before conducting the search. This argument fails because it is without support in the trial record. Snelling testified that she did not know if Alama was in the house when she consented to the search. Neither Alama nor the officers who testified for the government were asked whether there was any conversation when Alama was arrested. Thus, there is no evidence that Alama objected to the search after his arrest and before the search occurred.[2] Indeed, Alama was not asked whether he would have objected to the search had he been asked. He testified only that he was not there when the search occurred and denied that any of the seized contraband belonged to him. In these circumstances, <u>Rodriguez</u> and <u>Matlock</u> are controlling. The district court properly overruled Alama's objection to admission of the fruits of the search.

### III. Admission of Conspirator Plea Agreements

Alkafaji and four other cooperating witnesses testified during the government's case in chief. On direct examination, each testified that he or she had entered into a plea agreement. Each agreement was then received into evidence without objection by the defense, as expressly authorized by <u>United States v. Brown</u>, 941 F.2d 656, 659 (8th Cir. 1991). <u>Accord</u> <u>United States v. Kroh</u>, 915 F.2d 326, 331 (8th Cir. 1990) (en banc); <u>United States v. Drews</u>, 877 F.2d 10, 12 (8th Cir. 1989). Consistent with <u>Brown</u>, the district court instructed the jury:

---

[2]<u>Compare</u> <u>United States v. Hudspeth</u>, 459 F.3d 922, 925 (8th Cir. 2006), <u>vacated & reh'g en banc granted</u>, No. 05-3316 (8th Cir. Jan. 4, 2007).

You must not consider such a guilty plea as any evidence of this defendant's guilt. You may consider such a guilty plea only for the purpose of determining how much, if at all, to rely upon a witness's testimony.

On appeal, Alama urges us to reconsider our decision in <u>Brown</u>, arguing that "to permit the introduction of plea agreements of coconspirators listed as co-defendants in the Indictment renders the defendant's presumption of innocence nugatory." Only the en banc court may overrule a prior panel decision, <u>see, e.g.</u>, <u>Murphy v. United States</u>, 268 F.3d 599, 601 (8th Cir. 2001), particularly a panel decision that construed <u>Kroh</u>, a prior decision of the court en banc.

At oral argument, counsel for Alama argued for the first time that plea agreements should not be admissible during the direct examination of cooperating witnesses in the District of Nebraska because the terms of the standard agreement used by the United States Attorney's office in that District contain impermissible vouching of the witness's credibility. District courts have discretion to exclude all or part of a plea agreement whose specific terms would have an "'undue tendency to suggest decision on an improper basis.'" <u>United States v. Morris</u>, 327 F.3d 760, 762 (8th Cir. 2003) (quoting Fed. R. Ev. 403 & Advisory Committee notes). But this issue was not raised at trial; indeed, it was not timely raised on appeal. Thus, there was no error, plain or otherwise, in admitting the plea agreements, allowing extensive cross exam by Alama's trial counsel regarding those agreements, and then instructing the jury that the agreements may not be considered evidence of Alama's guilt.

The judgment of the district court is affirmed.

_____