# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1664

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　Appellee,　　　　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　　v.　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　Northern District of Iowa.
Anthony Hicks,　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　Appellant.　　　　　　*

_____

Submitted: November 19, 2004
Filed: May 27, 2005

_____

Before SMITH, BEAM, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Anthony T. Hicks ("Hicks") was charged in a two-count indictment with (1) distribution of approximately 8.67 grams of a mixture containing a detectable amount of cocaine base, commonly called "crack cocaine" having previously been convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 851, and 18 U.S.C. § 2, and (2) conspiracy to distribute 5 grams or more of a mixture containing a detectable amount of cocaine base, commonly called "crack cocaine," having been previously convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 851. Hicks pled guilty to the conspiracy charge in the United States District Court for the Northern District of Iowa and was

sentenced to 151 months imprisonment and eight years supervised release. Hicks filed a timely notice of appeal and argued that the district court's findings of fact during the sentencing were clearly erroneous. For the reasons below, we affirm the district court's[1] sentence of imprisonment and supervised release.

After entering his guilty plea, Hicks sought a "safety-valve" sentence reduction and, at his request, was interviewed by law enforcement officers. The purpose of the interview was to establish drug quantity and the date Hicks began his criminal conduct for criminal history scoring. During that interview, Hicks stated that he moved to Cedar Rapids, Iowa, in June 2000 and began selling crack cocaine in that area for approximately six to eight months prior to December 2000. Hicks revealed that, beginning in June 2000, he sold one-quarter ounce quantities of crack cocaine each month until December 2000. According to Hicks, when he resumed his crack cocaine sales in January 2001, he was selling at a rate of approximately one ounce per month for the next year. According to Hicks, beginning in January 2002, he took a three to four month sabbatical from selling crack cocaine, but later resumed his crack cocaine sales, obtaining and selling one ounce quantities of crack cocaine per month through the summer of 2002.

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

Based on Hicks's admissions[2] in this interview, the Presentence Investigation Report ("PSR") calculated the quantity of crack cocaine at approximately 500 grams, resulting in a base offense level 36. The PSR also concluded that Hicks's offense began while he was on probation and that his probation was revoked on August 1, 2000. Hicks objected to the PSR's quantity calculation, specifically, Paragraph 13, which calculated Hicks's distribution at one-quarter ounce of crack per month beginning in June 2000 and continuing for six months. Hicks also objected to Paragraph 14, which assumed Hicks sold one ounce of crack per month from January 2001 to January 2002.

At sentencing, Hicks testified that during the safety-valve interview he was mistaken about when he settled and began selling crack cocaine in Cedar Rapids. He testified that he actually moved to Cedar Rapids permanently in October 2000.

---

[2]Hicks filed a motion for supplemental briefing on the applicability of the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. ____,124 S.Ct. 2531 (2004), upon his sentencing. We find that no additional briefing is required, as the district court's drug quantity finding, although not determined by the jury, was based upon Hicks's admissions during the safety valve interview after he pled guilty. *See United States v. Poulack*, 236 F.3d 932, 937 (8th Cir. 2001) (affirming sentence based on drug quantity amount determined by district judge where defendant stipulated and admitted to drug quantity figure when he had knowledge that quantity was a key factor in determining the maximum sentence). The district court may sentence a criminal defendant based upon admitted facts without running afoul of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which was extended by *Blakely* and, most recently, *United States v. Booker*, Nos. 04-104, 04-105, 2005 U.S. LEXIS 628, at *45-*46 (Jan. 12, 2005) ("[a]ny fact . . . which is necessary to support a sentence exceeding the maximum authorized by facts established by a plea of guilty or a jury verdict *must be admitted by the defendant* or proved by a jury beyond a reasonable doubt") (emphasis added). Moreover, as noted by the district court, the sentence of 151 months is at the low end of the Guidelines range for a total offense level 33, but is at the high end of the Guidelines range of the total offense level had Hicks's in-court testimony about the quantity of drugs been deemed credible. Therefore, Hicks's sentence may not have been any different.

According to Hicks, in the summers, during which the PSR assumed he was in Cedar Rapids selling crack, he was actually in Chicago, Illinois, caring for his child and younger siblings. Hicks explained that during the safety-valve interview, he first told officers he began selling in late December 2000, but then recalled that it had to be before that, and changed his answer to "summer" at some later point during the interview. Hicks offered into evidence the permanent school record of his son as proof that the child was enrolled in school in Cedar Rapids in October 2000. Hicks testified that he enrolled his son in school shortly after they moved to Cedar Rapids permanently. Hicks also testified that in August of 2000, he had a couple of court cases in Chicago and that he did not begin dealing crack in Cedar Rapids until sometime after those cases were resolved, which occurred in mid-August 2000. Hicks's sister also testified and supported her brother's account of when he permanently settled in Cedar Rapids.

The district court overruled Hicks's objections regarding the calculation of drug quantity, "safety-valve" status, and criminal history calculation. The court specifically found that Hicks's in-court testimony was not credible, as Hicks had substantial motive to lie. We review the district court's sentence under the Guidelines for unreasonableness. *United States v. Booker*, Nos. 04-104, 04-105, 2005 U.S. LEXIS 628, at \*70–\*71, \*80 (Jan. 12, 2005) (invalidating 18 U.S.C. § 3742(e)).

When a defendant makes admissions regarding drug quantity, a court may rely on the admissions to establish the base offense level. *United States v. Symonds*, 260 F.3d 934, 936 (8th Cir. 2001). In determining Hicks's base offense level and criminal history score, the court was faced with two versions of events given by Hicks: one given during the safety-valve interview and one given during the sentencing hearing. There was no independent evidence to support Hicks's revised version of when he settled and began selling crack in Cedar Rapids and it was not until the PSR revealed the probation officer's Guidelines calculations that Hicks changed his story. The district court found that Hicks's primary purpose in doing so was to lessen his base

offense level and drug quantity calculation to take advantage of the safety-valve reduction. The district court did not find his changed account credible. Based upon this record, we are not persuaded to reverse that credibility determination. *See Darden*, 70 F.3d at 1545.

The district court's sentence is affirmed.

_____