# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2706/2754

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Cross-Appellant/Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Angel Velazquez, | * | |
| | * | |
| Cross-Appellee/Appellant. | * | |

_____

Submitted: February 16, 2005
Filed: June 8, 2005

_____

Before LOKEN, Chief Judge, RILEY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Angel Velazquez was sentenced to life imprisonment by the district court[1] after a jury found him guilty of conspiracy to distribute methamphetamine, possession of methamphetamine, and being a felon in possession of a firearm. Velazquez appeals, arguing that the jury had insufficient evidence to convict and that the court erred by

_____

[1]The Honorable Joseph F. Bataillon, Chief Judge, United States District Court for the District of Nebraska.

overruling his motion in limine, and by enhancing his sentence based on prior convictions.[2] We affirm.

## I. *Background*

Police Narcotics investigator Douglas Molczyk made three controlled methamphetamine buys from Velazquez through informant Cindy Peralta at Velazquez's residence. Peralta purchased a total of 24.56 grams of methamphetamine. Molczyk executed a search warrant at Velazquez's residence. Police arrested Velazquez and Jodene Callahan, who was also present in the home at the time of the search. Callahan was in possession of 2.74 grams of methamphetamine that she had just purchased from Velazquez. The officers seized another 13.67 grams from Velazquez's residence. Velazquez was subsequently indicted by the grand jury.[3]

Prior to trial, Velazquez filed three motions in limine seeking to: (1) suppress certain statements he made when arrested; (2) preclude the introduction of any evidence relating to the reason Velazquez possessed a firearm; and (3) prevent the

---

[2]The government cross-appealed the district court's post-judgment verdict dismissing count two. While we agree that the district court erred in dismissing this count, because we are affirming Velazquez's life sentence, the court's error is harmless. We must emphasize that our decision is for the sake of judicial economy and is restricted to the facts of this particular case.

[3]The grand jury later issued a seven-count superseding indictment charging Velazquez with conspiracy to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1), and 21 U.S.C. § 846 (count one), possession of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(1)(B)(1) (count two), felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (count three), and possession with intent to distribute less than 50 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a) and 841(c) (counts four through seven ). A second superseding indictment was later issued, mirroring the first superseding indictment, but expanding the period of the conspiracy by two years.

government and the court from referring to Velazquez's prior convictions. The district court denied Velazquez's motion regarding the firearm, but granted his two other motions. Three days prior to trial, the government filed an information pursuant to 21 U.S.C. § 851 to establish Velazquez's prior convictions.[4]

At trial, Velazquez's co-conspirators testified for the government. At no time, however, did the government promise that they would receive favorable treatment. The primary evidence against Velazquez consisted of the testimony of Callahan, Kevin Glazer, Susan Miller, Gregg Hergott, and Jose Karakatsanis. Callahan indicated that she had purchased "eight-balls" of methamphetamine (3.5 grams) "maybe twenty, thirty" times from Velazquez. Glazer stated that he sold Velazquez 1.5 pounds of methamphetamine in one day for $6,900. Miller confirmed that in the course of her relationship with Velazquez, she purchased about 40 pounds of methamphetamine from him. Hergott testified that he knew Velazquez through a mutual acquaintance and purchased 339.6 grams of methamphetamine from Velazquez and sold Velazquez several grams.

According to Hergott, in addition to the drug sales, Velazquez talked with him about killing Molczyk. Velazquez told Hergott that "something need[ed] to be done about Mr. Molczyk." Velazquez then stated that Molczyk needed to be killed. Hergott discussed this with Velazquez a second time when the two were in jail. During that

---

[4]21U.S.C. § 851(a)(1) states:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

meeting, Velazquez claimed that he and another man had arranged for a hit, but had "hired the wrong guy, they [Velazquez and the other man] got an undercover, they had given him $180 down and a gun."

Karakatsanis testified that Velazquez asked him if "he knew somebody that could commit a murder for him." Velazquez identified the person he wanted murdered as "the person that had arrested him." Karakatsanis, who had worked for Molczyk as a confidential informant in the past subsequently contacted Molczyk. According to Karakatsanis's testimony, he and undercover officer Rafael Rayos met Velazquez while he was out of jail on bond. Velazquez gave them money, showed them Molczyk's house, and told them to "kill him or whoever came out." Velazquez clarified this to mean "only him or his wife." Velazquez left and returned in a red Cadillac. Velazquez instructed Karakatsanis to take the pipe containing a sawed-off shotgun from the trunk of the Cadillac. Karakatsanis complied.

Following the close of the government's case, Velazquez made a motion for acquittal. The district court took the motion under advisement. The jury returned a guilty verdict on all seven counts. Velazquez filed a motion for a new trial, or in the alternative for acquittal. At an evidentiary hearing, the district court denied Velazquez's motion for a new trial, but granted his motion of acquittal with respect to count two—possession of a firearm in relation to a drug trafficking crime. Velazquez was sentenced to life imprisonment as a repeat offender on the basis of the felonies contained in the information.[5]

---

[5]In this appeal, Velazquez requested appointment of new counsel and requested to file a pro se reply brief. We denied Velazquez's request for new counsel, but permitted him to file a pro se supplemental brief. In his pro se brief, Velazquez raised two issues—a violation of the Speedy Trial Act and a defectively signed arrest warrant. Neither issue contains sufficient merit to warrant separate discussion and we summarily affirm the district court on both issues. See 8th Circ. R. 47B.

II. *Discussion*

A. *Evidence to Support the Jury Verdict*

We review the sufficiency of the evidence to support a guilty verdict in the light most favorable to the verdict, accepting all reasonable inferences tending to support the verdict as established. *United States v. Bascope-Zurita*, 68 F.3d 1057, 1060 (8th Cir. 1995), *cert. denied*, 516 U.S. 1062 (1996). We will only reverse if no reasonable jury could have found Velazquez guilty beyond a reasonable doubt. *United States v. Young-Bey*, 893 F.2d 178, 181 (8th Cir. 1990).

Velazquez argues that the government adduced insufficient evidence to enable a jury to find beyond a reasonable doubt that there was a drug conspiracy involving more than 500 grams of methamphetamine. Velazquez bases this argument on the alleged unreliability of the government's witnesses, all of whom had made plea agreements prior to testifying. Velazquez believes that all of the government's witnesses exaggerated the quantities of methamphetamine that they purchased from, or sold to, Velazquez and were too indefinite in their accounts to be believed. This argument lacks merit under the precedent of this circuit.

"To prove that [Velazquez] was a member of a conspiracy to manufacture or to distribute illegal drugs, the government must demonstrate (1) that there was a conspiracy, i.e. an agreement to manufacture or to distribute, (2) that [Velazquez] knew of the conspiracy, and (3) that [Velazquez] intentionally joined the conspiracy." *United States v. Hester*, 140 F.3d 753, 760 (8th Cir. 1998); *see also United States v. Jones*, 101 F.3d 1263, 1267 (8th Cir. 1996), *cert. denied*, 117 S. Ct. 1346 (1997). "If the record contains evidence from which the jury can find one overall agreement to commit an illegal act, the evidence establishes a single conspiracy." *United States v. Regan*, 940 F.2d 1134, 1135 (8th Cir. 1991). We believe that the evidence was sufficient for the jury to find that there was a conspiracy, of which Velazquez had knowledge, and intentionally joined.

We will not "pass upon the credibility of witnesses or the weight to be given their testimony." *United States v. Marshall*, 92 F.3d 758, 760 (8th Cir. 1996). The government's four main witnesses all testified that they purchased methamphetamine from Velazquez. Peralta purchased methamphetamine on three separate occasions totaling 24.56 grams, Callahan purchased 2.74 grams, Hergott testified that he purchased 339.6 grams, Glazer testified that he purchased 1.5 pounds, Miller testified she purchased at least 40 pounds, and police recovered 13.67 grams during a search of Velazquez's residence.

Velazquez's counsel cross-examined the government's witnesses and the jury heard unfavorable information about them. The jury was also made aware that no promises had been made to the witnesses regarding reduced sentences. But, even if such promises had been made, we have held that the promise of a reduced sentence does not affect testimonial reliability or the jury's acceptance of the testimony as valid. *See United States v. Baker*, 367 F.3d 790, 798 (8th Cir. 2004) ("The fact that these witnesses testified in exchange for the possibility of reduced sentences does not categorically make their testimony infirm or require that their testimony be corroborated in order to support a conviction."); *see also United States v. Maggard*, 156 F.3d 843, 847 (8th Cir. 1998) ("The jury's choice to credit the testimony of those witnesses was within its province, and we will uphold the conviction if substantial evidence supports it."); *United States v. Martinez*, 958 F.2d 217, 218 (8th Cir. 1992) ("The jury was aware of [the witness's] cooperation with the government, of the potential for a reduction of his sentence in exchange for his assistance, and of his extensive criminal record . . . . It is the sole province of the jury to weigh the credibility of a witness."). Here, the jury found the government's witnesses to be credible and accepted their testimony. The testimony of these witnesses established a sufficient factual basis for a jury to find that Velazquez committed the offenses charged by the government.

## B. *Velazquez's Motion in Limine*

We review a district court's decision denying a motion in limine for abuse of discretion. *United States v. Whitehead*, 176 F.3d 1030, 1036 (8th Cir. 1999). Prior to trial, Velazquez moved in limine to exclude any testimony that he possessed a shotgun in order to have Molczyk murdered. Velazquez's motion was denied. Velazquez contends that the district court abused its discretion in admitting this evidence. Velazquez argues that the government introduced the sawed-off shotgun to confuse and inflame the jury, and that the evidence was unnecessary to prove the allegations in the indictment. He argues that evidence of the gun significantly influenced the jury. Finally, Velazquez points out that after this evidence was introduced, the district court granted his motion for acquittal on count two. Velazquez cites no authority in support of his arguments and we find them to be without merit.

Velazquez's argument depends upon whether evidence that he possessed a gun to kill Molczyk or his wife had any probative value. The evidence shows that Velazquez attempted to hire someone to assassinate Molczyk in order to prevent interference with his drug trafficking conspiracy and that Velazquez possessed a sawed-off shotgun for that purpose. The government's theory, which the jury accepted, was that elimination of Molczyk would allow Velazquez to continue with the drug conspiracy. In denying Velazquez's motion in limine, the district court found that there was a "reasonable inference" that Velazquez sought Molczyk's murder so that he could "continue with the conspiracy in which he is charged." Thus, the evidence was probative to establish that Velasquez conspired to distribute methamphetamine. The district court did not abuse its discretion.

## C. *Enhancing Velazquez's Sentence*
## *Based on His Prior Convictions*

Velazquez argues that the information filed by the government pursuant to 21 U.S.C. § 851, alleging that he committed two prior felonies, required the government to prove those convictions to a jury beyond a reasonable doubt—something the

government failed to do. The government was not required to prove Velazquez's prior convictions to the jury. In *United States v. Booker*, 125 S. Ct. 738 (2005), the Supreme Court affirmed that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 756; *see also Shepard v. United States*, 125 S. Ct. 1254 (2005).

During a § 851 hearing, the government offered certified copies of Velazquez's convictions for distribution of cocaine. The court asked Velazquez, what convictions he thought the government had failed to prove. Velazquez argued that it was never proven that he had been "received" when convicted for distribution of cocaine. The district court found that the government had sufficiently established the prior felonies. We agree. Certified copies of prior convictions are acceptable to prove prior convictions. *See United States v. Prior*, 107 F.3d 654 (8th Cir. 1997), *cert. denied*, 522 U.S. 824 (1997).

Velazquez also contends that the government's filing of the information on Friday with trial beginning the next Monday, precluded him from having "ample time to determine whether he should enter a plea or go to trial, and to plan his trial strategy with full knowledge of the consequences of a potential guilty verdict." We hold that Velazquez had adequate time to review the government's information. Velazquez acknowledged that he received the information, that he understood it, that his penalties could be enhanced, and that he discussed this with his attorney. Velazquez was also informed by counsel that he could receive life imprisonment.

We have held that, "for purposes of section 851, the government must file its information before jury selection begins, thus allowing the defendant 'ample time to determine whether he should enter a plea or go to trial, and to plan his trial strategy with full knowledge of the consequences of a potential guilty verdict.'" *United States*

*v. Robinson*, 110 F.3d 1320, 1328 (8th Cir. 1997) (citing *United States v. Johnson*, 944 F.2d 396, 407 (8th Cir.), *cert. denied*, 502 U.S. 1008 (1991). In *Robinson*, we indicated that the government complied with § 851 when it filed the information just *minutes* before the jury pool was brought in for voir dire. *Id.* Velazquez had considerably more time than was found adequate in *Robinson*.

We find no error and affirm.

_____