# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2537

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the Western |
| v. | * | District of Missouri. |
| | * | |
| Jermaine D. Jones, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 14, 2009
Filed: March 20, 2009

_____

Before MURPHY and SMITH, Circuit Judges, and LIMBAUGH[1], District Judge.

_____

LIMBAUGH, District Judge.

This is an appeal from the judgment and sentence imposed following appellant's conviction by a jury on five of six drug-related charges. Appellant presents only two issues: 1) whether the evidence was sufficient to support the conviction on Count One of the Indictment, and 2) whether appellant's sentence was impermissibly enhanced under 21 U.S.C. sec. 851. Affirmed.

---

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri, sitting by designation.

The evidence in the case, which we view "in the light most favorable to the jury verdict and giving the verdict the benefit of all reasonable inferences," *United States v. Montano*, 506 F.3d 1128, 1132 (8th Cir. 2007) (citing *United States v. Wintermute*, 443 F.3d 993, 1003 (8th Cir. 2006)), is as follows:

On November 20, 2006, an undercover detective with the Kansas City, Missouri Police Department (KCPD) went to a park at 9th and Harrison in Kansas City, known colloquially as 'Jurassic Park' and also known as an open and notorious market for illegal drugs. The detective sat on a bench and waited for a seller to approach him. Appellant, Jermaine Jones, walked toward the detective, and asked him what he wanted. The detective said he wanted $16 worth of crack cocaine. Jones then gave the detective .21 grams of crack for $16 in pre-recorded buy money. The two men exchanged phone numbers for future transactions. Police had maintained surveillance of the transaction and gave Jones' description to uniformed officers so they could arrest him.

After the sale was complete, the uniformed officers approached Jones and a female, identified as Lee Harris, who were sitting on a bench. The officers saw Jones place something shiny on the bench between himself and Harris. The officers recovered the shiny object, which was a Smith & Wesson, .357 caliber revolver. In addition, when the officers ordered Harris to stand up, they saw 3.62 grams of crack cocaine fall from her lap. The officers placed Jones and Harris under arrest, and recovered from Jones the pre-recorded buy money used by the detective to buy the crack cocaine.

After being advised of his rights under *Miranda*, Jones provided a statement to detectives. He said he had been selling an eight-ball (3.5 grams of crack cocaine) every day for about three months to support his own drug habit. He admitted he was

in possession of the money which was the proceeds of the crack cocaine sale. He also said the gun belonged to his girlfriend, Harris, for protection during the crack cocaine sales. Both Jones and Harris were released from custody pending further investigation.

Jones again contacted the buyer (apparently unaware that the buyer was an undercover detective) several times after the initial arrest in order to sell him more crack cocaine. They arranged a deal, which took place on December 5, 2006, at 31st and Harrison, Kansas City, Missouri. The undercover detective contacted Jones by phone once he was in the area, and Jones said he was "sending it out." At that time, an unknown female delivered .58 grams crack cocaine to the detective in exchange for $40.

After the buy, Jones called the detective several times, accusing him of shorting Jones $60 for the crack, and threatening harm to the detective if Jones did not receive the money. The detective then made arrangements to buy an additional $50 worth of crack cocaine, and pay the remaining $60. This transaction was to take place at 3025 Harrison in Kansas City, but due to Jones' threats and his previous possession of a handgun, officers decided to arrest Jones before the planned buy.

On December 6, 2006, the undercover detective saw Jones at 31st and Campbell in Kansas City, and notified uniformed officers to arrest him. When they approached, Jones dropped a plastic bag and fled on foot. He attempted to enter a Lexus that was parked nearby, but the driver of the Lexus saw police and drove away at a high rate of speed. Jones was then apprehended, and the contents of the plastic bag he dropped was determined to be "Sheetrock", which contained no controlled substance.

Meanwhile, the police pursued the Lexus and after an extended chase, the Lexus crashed resulting in the arrest of the occupants. The driver of the Lexus was later identified as Marlin Sanders, and Lee Harris was a backseat passenger. Officers

recovered from in and around the Lexus, 4.7 grams marijuana, 64.6 grams crack cocaine, 20.7 grams cocaine powder, and a loaded Glock Model 23, .40 caliber handgun.

After her arrest, Harris gave consent to search the apartment she and Jones shared in Kansas City, Missouri. Detectives recovered a digital scale, 106 grams of Sheetrock similar to what Jones had attempted to sell the undercover detective, and 26 rounds of .40 caliber Smith & Wesson ammunition from the apartment.

Jones made a statement after his arrest, explaining that he was supposed to meet Sanders to buy crack cocaine from him, and that he had bought from Sanders before. Jones was again released pending further investigation. Cell phone records obtained later showed that Jones and Sanders had been in frequent contact in November and December 2006.

On January 8, 2007, KCPD officers again saw Jones in the area of 9th and Harrison in Kansas City, engaged in what appeared to be a drug deal. When the officers approached Jones, he dropped 1.27 grams crack cocaine to the ground which the officers seized. Jones identified himself as Reginald Wilson, but Jones' true identity was determined after his arrest. He was again released pending further investigation.

On January 9, 2007, Jones was stopped while driving a stolen vehicle at 9th and Harrison. Officers recovered 4.67 grams crack cocaine from the floorboard of the vehicle. Jones denied possession of the crack cocaine, but admitted that he was on his way to buy crack cocaine when they stopped him.

Then on February 7, 2007, a federal grand jury sitting in the Western District of Missouri returned a seven-count indictment charging Jones in six of the counts: (1) Count One - conspiracy to distribute 50 grams or more of cocaine base, in violation

- 4 -

of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846; (2) Count Two - distribution of cocaine base, in violation of 21 U.S.C. § 841 (a)(1) and (b)(1)(C); (3) Count Three - possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); (4) Count Four - possession of a firearm as a user of unlawful drugs, in violation of 18 U.S.C. §§ 922 (g)(3) and 924 (a)(2), and 2; (5) Count Five - distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and (6) Count Six - possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841 (a)(1) and (b)(1)(A).

Jones' jury trial began on January 14, 2008. Because Jones' two co-defendants, Marlin Sanders and Lee Harris, pled guilty, Jones proceeded to trial alone, and Harris testified for the government pursuant to a cooperation agreement.

Harris testified that she started living with Jones in March 2006, and at that time Jones was selling drugs on the street. She also testified that she then lost her job, and in August 2006, she began helping Jones sell drugs at Jurassic Park. She added that from March through November 2006, Jones sold crack cocaine at Jurassic Park approximately five times per week, and that Jones bought cocaine from his suppliers two to three times per week, in amounts of $180 to $1,000. A police investigator later testified that the retail value of crack cocaine in Kansas City was as high as $100 per gram of crack cocaine.

Following a two-day trial, the jury found Jones guilty as charged on Counts One, Two, Three, Four, and Five, but not guilty as to Count Six.

The presentence investigation report concluded, and the Court[2] so held, that Jones' Sentencing Guidelines' range was 360 months to life imprisonment, based upon

---

[2]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

a total offense level of 37 and a criminal history category of VI. Before the sentencing hearing on July 8, 2008, Jones objected, *inter alia*, to the finding that the total weight of cocaine base he possessed was more than 50 grams, and to the finding that his sentence on Count I was subject to a 21 U.S.C. § 851 enhancement from a statutory mandatory minimum of ten years, to 20 years. Although these objections were overruled, the Court granted a downward variance of ten years and sentenced Jones to the mandatory minimum of 20 years imprisonment on Counts One, Two, Three, and Five, to run concurrently; and ten years imprisonment on Count Four, also to run concurrently. This appeal followed.

## II.

Jones' first claim is that the "Evidence presented at trial was insufficient to support [his] conviction for participating in the Count One conspiracy to distribute more than 50 grams of cocaine base." Notably, Jones does not challenge his convictions for distribution of crack cocaine, possession with intent to distribute crack cocaine, or possession of a firearm. Nor does he challenge the sufficiency of the evidence proving his involvement in a crack cocaine distribution conspiracy. Instead, he challenges only the sufficiency of the evidence proving that the conspiracy involved an amount of 50 grams or more of crack cocaine.

Sufficiency of the evidence is reviewed *de novo. United States v. Fitz,* 317 F.3d 878, 881 (8th Cir. 2003). As noted, appellate courts view "the evidence in the light most favorable to the jury verdict and giving the verdict the benefit of all reasonable inferences." *United States v. Montano,* 506 F.3d 1128, 1132 (8th Cir. 2007) (citing *United States v. Wintermute*, 443 F.3d 993, 1003 (8th Cir. 2006)). Under this stringent standard, a verdict will be overturned "only in rare cases." *United States v. Lee*, 356 F.3d 831, 836 (8th Cir. 2003). Reversal is required only if no reasonable jury could have found the defendant guilty. *Montano*, 506 F.3d at 1132 (citing *United States v. Sanders*, 341 F.3d 809, 815 (8th Cir.2003)).

At the outset, Jones concedes that "the Government may prove a conspiracy by either direct or indirect evidence," citing *United States v. Jackson*, 204 F.3d 812, 814 (8th Cir. 2000). In addition, jury verdicts may be "based solely on the testimony of conspirators and cooperating witnesses," as it "is within the province of the jury to make credibility assessments and resolve conflicting testimony." *United States v. Buckley*, 525 F.3d 629, 632 (8th Cir. 2008) (citing *United States v. Velazquez*, 410 F.3d 1011, 1015-16 (8th Cir.), *cert. denied,* 546 U.S. 971 (2005)).

The gist of Jones' complaint is that the total amount of cocaine base actually seized from him in the several incidents amounted only to 10.26 grams, and that to extrapolate from that amount "all the way to the 50 grams required to convict Mr. Jones" is a "leap of faith" that should not be allowed. This leap of faith, he explains, can only be made by undue reliance on "the uncorroborated testimony of Lee Harris, a witness facing substantial problems of her own." Nonetheless, Jones then concedes that "it is the jury's general duty to determine the credibility of various witnesses," and that "it might be reasonable to believe that any drug dealer likely sold more than that which was purchased or seized by law enforcement." He also acknowledges that "Mr. Jones admitted additional conduct," and though he concludes that "reliance on the statements of Mr. Jones is misplaced," he offers no reason therefor.

The record shows that the evidence regarding the several incidents during which crack cocaine was actually seized, combined with Lee Harris' testimony, provides a sufficient basis to sustain Jones' conviction for conspiracy to distribute 50 grams or more cocaine base. She testified that Jones sold drugs when she moved in with him in March 2006, that she began helping in August 2006, and that she and Jones sold crack cocaine at 'Jurassic Park', at 9th and Harrison, every day from August 2006 until their arrest at the park on November 20, 2006. Harris testified that she acted as a lookout for Jones while he was selling at the park, and directed

customers to him. Harris further testified that Marlin Sanders was one of Jones' suppliers, and that Jones typically bought $180 to $300 worth of crack cocaine, two to three times a week, but on one occasion, Jones bought $1000 worth of crack from Sanders. Attributing the lowest possible weight to Jones from Harris' testimony, Jones bought a minimum of four grams crack cocaine per week, for a minimum of twenty-eight weeks (April to November), which results in a minimum amount of 112 grams, at the high retail price of $100 per gram crack cocaine. This figure does not include Jones' crack purchase for $1,000, or Jones' continued drug dealing after November 20, 2006, which continued to at least January 9, 2007.

Although Jones attacks the credibility of cooperating witness Lee Harris, "[i]t is axiomatic that we do not review questions involving the credibility of witnesses, but leave credibility questions to the jury," *Montano*, 506 F.3d at 1133 (quoting *United States v. Dabney*, 367 F.3d 1040, 1043 (8th Cir. 2004)). There are a number of cases similar to the case at hand that are particularly instructive. For instance, in *United States v. Buckley*, 525 F.3d 629 (8th Cir. 2008), the defendant claimed the evidence was insufficient to convict him of conspiracy to distribute 50 grams or more crack cocaine, because the government proved only one controlled buy from him, with a weight of only 6.5 grams crack cocaine. *Buckley, id.* at 631, 632. Buckley argued that the government relied on a "parade of cooperating witnesses" with almost no corroborating evidence (other than the controlled buy) such as drug proceeds, scales, packaging materials, or photographs. *Id* at 632. However, the Eighth Circuit rejected his claim, holding that the credibility of the cooperating witnesses was for the jury to assess, and that "[t]he evidence was clearly sufficient to convict Buckley of conspiring to distribute fifty grams or more of crack cocaine." *Id.* at 633.

Another similar case is *United States v. Velazquez*, 410 F.3d 1011 (8th Cir. 2005) in which the defendant challenged the sufficiency of the evidence supporting his conviction for conspiracy to distribute 500 grams or more methamphetamine, which was based primarily on the testimony of cooperating witnesses, as police had

bought and recovered from Velazquez only 40.97 grams methamphetamine. *Velazquez, id.* at 1013-14. Velazquez argued that the government's witnesses were unreliable, because they had testified pursuant to plea agreements and were indefinite as to the quantity of methamphetamine they bought from, or sold to Velazquez. *Id.* at 1015. Nonetheless, the Eighth Circuit upheld the verdict, holding that "the jury found the government's witnesses to be credible and accepted their testimony. The testimony of these witnesses established a sufficient factual basis for a jury to find that Velazquez committed the offenses." *Id.* at 1016.

Even if Lee Harris' testimony should be discounted, Jones' own confession to police also provides sufficient evidence to support the drug weight in Count One. "When a defendant makes admissions regarding drug quantity, a court may rely on the admissions to establish the base offense level." *United States v. Hicks*, 411 F.3d 996, 998 (8th Cir. 2005) (citing *United States v. Symonds*, 260 F.3d 934, 936 (8th Cir. 2001)). After his arrest on November 20, 2006, Jones admitted to police that he had been selling crack cocaine at the park for three months, and that he sold approximately an eight-ball (3.5 grams) per day. Thus, Jones confessed to selling at least 315 grams crack cocaine from August through November 20, 2006. In fact, this confession understates the weight that Jones sold during the conspiracy, as Jones was released from custody November 21, 2006, and continued selling crack cocaine through January 2007, as evidenced by his numerous subsequent drug arrests.

For the foregoing reasons, this Court holds that Jones' conviction for conspiracy to distribute 50 grams or more cocaine base is supported by more than sufficient evidence.

### III.

In his second point, filed pursuant to *Anders v. California*, Jones claims that his conviction for possession of a controlled substance does not qualify as a "prior felony

drug offense" and therefore cannot be used to enhance his sentence pursuant to 21 U.S.C. §§ 841 (b)(1)(A) and 851. But both the statutes and Eighth Circuit case law clearly permit the use of a simple drug possession conviction, as long as it is a felony, for enhancement. In fact, the Eighth Circuit has upheld enhancement by simple possession convictions even where imposition of sentence has been suspended. *United States v. Ball*, 499 F.3d 890, 899 (8th Cir. 2007).

The term "felony drug offense" is defined by statute as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C.§ 802(44). No element of trafficking or distribution is required.

At trial, the government presented the Court with a certified copy of Jones' prior felony drug conviction, which was marked as Government Exhibit #18a. The conviction was for the possession of cocaine, which is a drug conviction. The date of the conviction is July 2000, which is prior to the instant case. The conviction is identified on the face of the document as a felony. Thus, the conviction is: (1) prior to the instant crime, which began January 1, 2006; (2) a felony; and (3) a drug conviction, as it is for possession of cocaine. The certified records prove the conviction qualifies as a prior felony drug conviction. *United States v. Ramon-Rodriguez*, 492 F.3d 930, 940 (8th Cir. 2007). Accordingly, Jones' argument that the conviction does not qualify as a prior felony drug offense has no merit.

## IV.

For these reasons we affirm the judgment of the district court.

_____