# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-4007

_____

United States of America

*Plaintiff - Appellee*

v.

Theodore S. Wiggins, also known as Theo

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 20, 2013
Filed: April 3, 2014

_____

Before BENTON, BEAM, and SHEPHERD, Circuit Judges.

_____

BEAM, Circuit Judge.

Theodore Wiggins appeals his conviction by jury and sentence for conspiracy to distribute more than five kilograms of cocaine and more than 50 grams of cocaine

base. The district court[1] sentenced him to life imprisonment pursuant to the sentencing enhancement provisions of 21 U.S.C. §§ 841 and 851. We affirm.

## I.    BACKGROUND

Police in Kansas City, Missouri, began looking into Wiggins as part of a cocaine distribution conspiracy after police utilized court-approved wiretaps in February 2010 on the phones of Shawn Hampton. Through use of these wiretaps, authorities learned that Wiggins was primarily a street level distributor for Hampton in a large-scale cocaine conspiracy. On wiretap calls heard by the jury at trial, Wiggins and Hampton discussed cooking, purchasing and distributing the cocaine base. Based upon the wiretap evidence, Wiggins was charged with two counts in a multi-count indictment, and he was arrested in June 2010. Prior to Wiggins' trial, the government filed its notice of intent to seek to enhance Wiggins' punishment under 21 U.S.C. §§ 841 and 851, due to Wiggins' two previous felony drug convictions.

Because Wiggins does not challenge the sufficiency of the evidence on appeal, we briefly recount the evidence presented at trial, as relevant to the issues on appeal. Several police detectives testified about their surveillance and undercover activities, including an officer's account of his undercover controlled purchase of cocaine base from Wiggins. The wiretap evidence (twenty-two selected calls from a pool of thousands of possible wiretaps) was played for the jury, while the transcript was displayed on an overhead projector. At the time that this evidence was presented, the jury was instructed that the contents of the calls, and not the transcripts, were the evidence. Hampton, who had reached a plea agreement with the government, testified about the extent of the conspiracy, including the fact that Wiggins purchased cocaine from him on numerous occasions. Another co-conspirator who had pleaded

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

guilty, Terrance Blewett, testified that Wiggins purchased cocaine from him, via Hampton, on at least two occasions. Finally, the jury heard evidence, pursuant to Rule 404(b), of Wiggins' prior convictions for sale and possession of cocaine base. The jury convicted Wiggins of count one for the conspiracy, and count eight for distribution, based upon his sale of cocaine to the undercover officer during the controlled buy.

At sentencing, the district court adopted the findings in the presentence investigation report (PSR) to establish the drug quantities of cocaine and crack cocaine attributable to the conspiracy, at least 840 grams. The court further noted that the government had properly given notice of its intent to enhance Wiggins' sentence based on prior convictions pursuant to 21 U.S.C. § 851, and that a Guidelines career offender status was also appropriate. The court sentenced Wiggins to life imprisonment on count one as required by statute, 21 U.S.C. § 841(b)(1)(A). On count eight, the distribution count, Wiggins received a concurrent sentence of 360 months, also the statutory maximum.

On appeal, Wiggins challenges (1) the use of transcripts from the wiretaps at trial, because the transcripts identified the speakers involved in the telephone calls; (2) the admission of Wiggins' prior convictions for distribution of cocaine base and possession of cocaine as Rule 404(b) evidence; (3) the PSR's calculation of the appropriate drug amount attributable to Wiggins; (4) the use of his prior conviction for simple possession of cocaine as a qualifying conviction for a statutory sentencing enhancement; and (5) the imposition of a life sentence. Wiggins also raises a claim of cumulative error.

## II.    DISCUSSION

### A.    Wiretap transcripts

We review the district court's admission of transcripts to aid in evaluating the wiretap evidence for an abuse of discretion. United States v. Frazier, 280 F.3d 835, 849 (8th Cir. 2002). Wiggins argues that the district court abused its discretion by allowing the government to use transcripts of wiretapped telephone conversations that identified Wiggins as the individual who referred to himself as "Theo" during the tape-recorded calls. Wiggins points to the fact that the name "Wiggins" was not used during the calls. However, two government witnesses, Hampton and Blewett, identified Wiggins' voice as belonging to the person who used the name Theo during the phone calls. Further, the district court issued a cautionary instruction that the tapes, not the transcripts, were evidence.

While Wiggins challenges the credibility of the two witnesses who provided the foundational identifications, this was an issue for the jury. United States v. Hodge, 594 F.3d 614, 618 (8th Cir. 2010). Further, the government agents who testified at trial also identified Wiggins as the person they observed meeting with Hampton. Finally, we previously allowed the use of transcripts to assist the jury in Frazier, where we held that because there was a sufficient foundation for the identification, and where the district court issued a very similar limiting instruction, there was no abuse of discretion in admitting the transcripts. 280 F.3d at 849. We similarly find there was more than sufficient evidence to support the identification of Wiggins' voice on the recordings, and the district court did not abuse its discretion in allowing the transcripts to be used to assist the jury.

## B.    Rule 404(b) evidence

Wiggins argues the district court abused its discretion in allowing the government to admit journal entries for Wiggins' two prior convictions for sale of cocaine base and possession of cocaine, both of which occurred between 1998 (conduct) and 2000 (conviction).  The journal entry indicates only that the convictions were for controlled substances, but the arresting officer in the prior cases testified that the controlled substances involved in these prior convictions were cocaine and cocaine base.  We review for an abuse of discretion the district court's admission of other crimes or acts evidence pursuant to Federal Rule of Evidence 404(b).  United States v. Dorsey, 523 F.3d 878, 879 (8th Cir. 2008).

If a defendant puts his intent and knowledge of a drug conspiracy in issue, the government can introduce evidence of a defendant's prior similar acts to help prove its case.  United States v. Banks, 706 F.3d 901, 906-07 (8th Cir. 2013).  Wiggins put his intent and knowledge at issue at trial, and thus, if the conviction was (1) relevant, (2) similar in kind and not too remote, (3) supported by evidence and (4) not substantially more prejudicial than probative, it was admissible under Rule 404(b). Id.  Of these four, the only plausibly contested element is remoteness, but since the convictions were in 2000, and the current conspiracy conduct occurred in 2009, they are not too remote according to our precedent.  See, e.g., United States v. Ironi, 525 F.3d 683, 688 (8th Cir. 2008) (holding that prior distribution and possession convictions that were eight and ten years before the charged conduct occurred were not too remote).  Accordingly the district court did not abuse its discretion in admitting the prior offenses.

## C.    Drug Quantity

Wiggins' next argument is that the district court erred in attributing drug quantities to him that were not reasonably in his possession.  The district court,

adopting the PSR recommendation, attributed at least 840 grams of cocaine base to Wiggins, based on the amount reasonably attributable to the conspiracy between June 2009 and June 2010. This resulted in a base offense level of 34. Wiggins points out that he did not join the conspiracy until September 2009 (he was in prison until that time), and argues the evidence shows that he was responsible for just over 370 grams. The government points out that since Wiggins had two qualifying offenses, the district court properly determined that he was a career offender pursuant to the Guidelines, resulting in a final base offense level of 37 regardless of the drug quantity attributable to Wiggins. Therefore, according to the government, any possible error in the drug quantity calculation was harmless.

Wiggins' argument is essentially a claim of procedural error by the sentencing court. We review the application of the Guidelines de novo, and the factual findings for clear error, and affirm the district court's drug calculation unless we are convinced a mistake has been made. United States v. Montes-Medina, 570 F.3d 1052, 1058-59 (8th Cir. 2009). A claim of procedural error is subject to harmless error analysis. United States v. Woods, 670 F.3d 883, 886 (8th Cir. 2012). For purposes of a defendant's relevant conduct and sentencing range, the district court may only take into account drug quantities at issue during the time frame that a defendant was part of the conspiracy. United States v. Foxx, 544 F.3d 943, 953 (8th Cir. 2008) (citing United States Sentencing Guidelines Manual (U.S.S.G.) § 1B1.3 cmt. n.2).

Given the government's argument, we will assume that the district court erred in calculating drug quantity. But, once Wiggins was deemed a Guidelines career offender, the base offense level was appropriately set at 37. See U.S.S.G. § 4B1.1. If the career offender designation was appropriate, the drug quantity calculation was indeed harmless. Thus we turn to Wiggins' next argument that he was erroneously deemed a career offender under the Guidelines.

**D.     Career Offender/Prior Felony Conviction**

Wiggins argues that one of his prior drug convictions does not qualify him for career offender status because this conviction was for simple possession. The Guidelines, specifically U.S.S.G. § 4B1.2(b), indicate such a conviction cannot be used to enhance his sentence to that of a career offender. However, Wiggins' argument misses the mark. As in every criminal case, the PSR set forth both the statutory provisions, and the Guidelines provisions. Of course, we learned in <u>United States v. Booker</u>, 543 U.S. 220 (2005), that the Guidelines are permissive and the statutes mandatory, but the PSR still routinely sets forth the analysis under both. In examining Wiggins' PSR and the sentencing transcript, we find that while it is true that the government used the two aforementioned drug offenses (one for possession and one for distribution) for the statutory enhancement, the PSR indicates that the qualifying felonies for the Guidelines career offender status did not include the drug possession offense. Instead, Paragraph 66 of the PSR indicates the Guidelines career offender status was based upon the distribution offense and two prior robbery offenses, all three of which qualify pursuant to the definitions in § 4B1.2. Wiggins' argument that the simple possession offense was used in the Guidelines career offender calculation simply misstates the record.[2] And, in any event, the statutory provisions mandating a life sentence on count one and capping the count eight

---

[2]Wiggins conflates the Guidelines career offender analysis with the statutory enhancement provisions, but key differences make conflation untenable. The Guidelines prohibit using simple possession as a career offender qualifying felony, <u>see</u> U.S.S.G. § 4B1.2(b). The statute, on the other hand, allows simple possession to be used as a qualifying prior conviction for the life sentence enhancement if it is punishable by imprisonment for more than one year. <u>See</u> 21 U.S.C. §§ 802(44), 841(b); <u>United States v. Jones</u>, 559 F.3d 831, 837 (8th Cir. 2009). Nor do the Guidelines require that the government give notice of the prior offenses it intends to use for the career offender analysis, unlike the statutory enhancement notice requirements in § 851.

sentence at 360 months trumped the Guidelines provisions. Accordingly, this argument is without merit.

### E.    Life Sentence

Wiggins argues the district court erred in sentencing him to a life sentence. As previously noted, any discretion the district court may have under the Guidelines is not present in the face of a statute's mandatory life sentence. See 21 U.S.C. § 841(b) ("If any person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment . . . ."). As previously discussed, the government gave notice of two prior felony drug offenses and proved them up at trial. Though not mentioned in the briefing, at oral argument, Wiggins raised, for the first time,[3] the issue that application of the enhancement in 21 U.S.C. § 841(b) was not appropriate because a drug quantity of 280 grams of cocaine base was not proven at trial. Leaving aside the issue whether this argument is properly before us, we find that it is without merit. The verdict directing instruction required the jury to find that Wiggins was responsible for at least 280 grams of cocaine base. The jury did so find, and the operation of 21 U.S.C. § 841(b) plus two qualifying felony drug offenses mandated that the district court impose a life sentence.

### F.    Cumulative Error

Wiggins' final argument is that the cumulative effect of these alleged errors entitles him to a new trial. As Wiggins was not substantially prejudiced by a plethora of errors, he cannot argue that cumulative error requires reversal. United States v.

---

[3]Wiggins raised a drug quantity issue, but as we read the briefing, it involved only the issue of whether the district court properly attributed the entire 840 grams of cocaine base distributed during the conspiracy to Wiggins.

Blaylock, 421 F.3d 758, 773 (8th Cir. 2005) (standard for cumulative error reversal). The only possible error was the Guidelines drug quantity calculation, but as noted above, any error was harmless due to the operation of the Guidelines career offender provisions setting the base offense level at 37, and ultimately, the statutory mandatory life sentence. This final contention is without merit.

## III.    CONCLUSION

We affirm the judgment and sentence of the district court.

_____