# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-1816
_____

United States of America

*Plaintiff - Appellee*

v.

Keith Lavern Johnson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: February 29, 2016
Filed: April 11, 2016
[Unpublished]

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Keith Lavern Johnson pleaded guilty to conspiracy to distribute crack cocaine, 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846, and was sentenced by the district court[1]

_____

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

to 151 months' imprisonment. Johnson appeals his sentence, arguing that the court erred in adopting the drug quantity set forth in the presentence investigation report (PSR) over his objections and in calculating his sentence under the career-offender provision of the U.S. Sentencing Guidelines Manual (U.S.S.G. or Guidelines). We affirm.

As part of his guilty plea, Johnson admitted to conspiring to sell crack cocaine to a confidential informant (CI) on four occasions. The total weight of crack cocaine involved in these controlled buys was 25.96 grams. As set forth in the PSR, however, as Johnson and the CI were negotiating a price for the crack cocaine on one of these occasions, the CI's hidden recording device captured Johnson saying that he had almost not received two ounces (56.7 grams) of crack cocaine the day before and that he had earlier purchased one-quarter kilogram (250 grams) of crack cocaine for $13,000. Based on these recorded admissions, the PSR attributed an additional 306.7 grams of crack cocaine to Johnson. The PSR also attributed to Johnson 2.05 grams of crack cocaine that the CI purchased from Johnson's middleman at another controlled buy, as well as 28.35 grams of crack cocaine that the middleman stated in a police interview he had observed in Johnson's possession. In total, the PSR attributed to Johnson 355.06 grams of crack cocaine, which resulted in an offense level of 30 under § 2D1.1 of the Guidelines.[2]  See U.S.S.G. § 2D1.1(a)(5), (c)(5) (assigning an offense level of 30 for at least 280 grams but less than 840 grams of crack cocaine).

The PSR also set forth Johnson's extensive criminal history, which included state convictions for willful injury, harassment, failure to appear, assault on a police officer causing bodily injury, domestic assault, possession of a controlled substance, and criminal mischief, among others. The PSR recommended application of the

---

[2]Although the PSR attributed a total of 355.06 grams of crack cocaine to Johnson, the sum of these individual quantities is 363.06 grams. Neither party addresses this discrepancy.

Guidelines career-offender provision because at least two of Johnson's prior convictions—his willful injury and third-degree harassment convictions—were "crimes of violence" as required for application of that provision. U.S.S.G. § 4B1.2(a)(2). Because the offense level of 32 under the career-offender provision was greater than the offense level of 30 under the drug-quantity provision, Johnson's offense level was 32. U.S.S.G. § 4B1.1(b). Johnson's criminal history category was VI, based either on his criminal history or on application of the career-offender provision. After a 3-level reduction for acceptance of responsibility, the PSR calculated Johnson's total offense level as 29, which, coupled with his criminal history category of VI, resulted in a Guidelines sentencing range of 151 to 188 months' imprisonment.

At sentencing, Johnson conceded that the career-offender provision applied and that the Guidelines range was thus properly calculated. But he objected to the PSR's drug-quantity calculation, denying responsibility for all but the 25.96 grams of crack cocaine sold to the CI in the four controlled buys. Specifically, Johnson asserted that he was merely boasting when he told the CI that he had received 56 grams of crack cocaine the day before and that he had paid $13,000 for 250 grams of crack cocaine on another occasion. He denied ever possessing these quantities of crack cocaine and thus denied responsibility for the additional 306.7 grams. The district court overruled Johnson's objection, stating:

> Of course, it's a very difficult call for the court when someone during the process of a conspiracy makes representations about drug quantities and then comes to court and says, well, I was just boasting at the time. . . . [S]o it becomes a very difficult call for the court to decide which one of those is accurate and which one is not.

The court decided to credit Johnson's recorded statements to the CI and thus found Johnson responsible for the drug quantity set forth in the PSR. Johnson then requested a departure or variance from the advisory Guidelines range, arguing that the

career-offender provision overstated the seriousness of his criminal history. The court rejected Johnson's request, noting:

> I have looked at the [defendant's] past history to determine whether or not the career offender guideline really overstates the criminal history and has an undue impact under the circumstances of this case, and I've given that a lot of thought because I thought it might be kind of a close call under the circumstances of this case; but on further review, I have concluded that the guideline sentencing system adequately addresses the circumstances of this case and that the guideline range is reasonable and that a variance based upon overstatement of criminal history is not necessary or appropriate under this record.

After concluding that the career-offender provision was applicable, the court considered the 18 U.S.C. § 3553(a) factors and determined "that a sentence at the bottom of that guideline range," *i.e.*, a sentence of 151 months' imprisonment, "is fully sufficient to address all of the sentencing considerations in this case."

On appeal, Johnson argues that the district court clearly erred in finding that he was responsible for the drug quantity set forth in the PSR. We review a district court's calculation of drug quantity for clear error. United States v. Allen, 440 F.3d 449, 452 (8th Cir. 2006). Appellants "who challenge the sentencing court's determination of drug quantity face an uphill battle on appeal because we will reverse a determination of drug quantity only if the entire record definitely and firmly convinces us that a mistake has been made." Id. (quoting United States v. Coleman, 148 F.3d 897, 902 (8th Cir. 1998)). Johnson's own recorded statements to the CI accounted for the disputed 306.7 grams of crack cocaine attributed to him by the district court. "When a defendant makes admissions regarding drug quantity, a court may rely on the admissions to establish the base offense level." United States v. Hicks, 411 F.3d 996, 998 (8th Cir. 2005). Johnson conceded that he made these recorded statements, but he argued that they were not true and that he was merely boasting or exaggerating while negotiating with the CI on the price for the crack

cocaine. The district court did not clearly err in rejecting Johnson's attempt to disavow his earlier recorded drug-quantity admissions and in finding him responsible for the quantities set forth in the PSR. See United States v. Symonds, 260 F.3d 934, 936 (8th Cir. 2001) (concluding that district court's reliance on defendant's own estimates of drug quantity was not clearly erroneous and that its conclusion that defendant's drug-quantity estimates were credible "is virtually unreviewable on appeal").

Johnson next argues that the district court erred in applying the Guidelines career-offender provision because none of his prior state convictions qualifies as a crime of violence under that provision except by virtue of the "residual clause." U.S.S.G. § 4B1.2(a)(2) (defining a "crime of violence" to include any offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another"). Johnson contends that this "residual clause," like the identically worded residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague under the Supreme Court's recent decision in Johnson v. United States, 135 S. Ct. 2551, 2557, 2563 (2015) (holding that the ACCA's residual clause is unconstitutionally vague).

Johnson failed to raise this argument before the district court, and thus it has not been preserved for appeal. See United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005) (en banc). An error not properly preserved is reviewed only for plain error, regardless of whether the error affects a constitutional right or "results from a change in the law that occurred while the case was pending on appeal." Id. Under the plain-error standard of review, we will reverse only if an appellant can show that there was an error, that the error was "plain," and that the error affected his "substantial rights." Id. at 550 (citing United States v. Olano, 507 U.S. 725, 736 (1993)). Even if an appellant makes this showing, however, we will exercise our discretion to correct the error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (quoting Olano, 507 U.S. at 736).

In United States v. Wivell, 893 F.2d 156, 159-60 (8th Cir. 1990), we held that Guidelines provisions are "not susceptible to" constitutional vagueness challenges. We recently explained, however, that the holding in Wivell had been cast into doubt by Johnson. United States v. Taylor, 803 F.3d 931, 933 (8th Cir. 2015) (per curiam) (reiterating that "a prior panel ruling does not control 'when the earlier panel decision is cast into doubt by an intervening Supreme Court decision'" (quoting United States v. Anderson, 771 F.3d 1064, 1067 (8th Cir. 2014)). In Taylor, the government conceded that the defendant's sentence should be vacated and the case remanded in light of Johnson. Given this concession, it was unnecessary for the court to determine what standard of review applied to the defendant's claims of error, or whether the defendant had carried his burden under that standard of review. Instead, we simply remanded, leaving for the district court to address in the first instance whether the Guidelines residual clause was unconstitutional under Johnson. 803 F.3d at 933. In United States v. Benedict, No. 14-3412, 2016 WL 805694, at *7 (8th Cir. Mar. 2, 2016), on the other hand, without citing Wivell, we "[a]ssum[ed] without deciding that the holding of the Supreme Court's Johnson decision applies to the residual clause in the guidelines," but we affirmed on the basis that the defendant's prior burglary convictions otherwise qualified as crimes of violence under § 4B1.2(a)(2).

In United States v. Ellis, No. 15-1261, 2016 WL 859936, at *2, *3 n.2 (8th Cir. March 7, 2016), the government similarly conceded that the Guidelines residual clause was unconstitutionally vague under Johnson, but it argued that, under the plain-error standard of review, the defendant could not show a reasonable probability that he would have received a lighter sentence had the court not applied the residual clause. Noting that the government's concession that Johnson applied to the Guidelines residual clause was "not conclusive," we held that if there was error in applying the residual clause, the error was not plain or obvious. Id. at *2. We agree that the government's concession is not conclusive, but, as in Benedict, we will accept that concession for the sake of argument and assume without deciding that, under Johnson,

-6-

the district court's application of the Guidelines career-offender residual clause was plain error.[3]

A sentencing error affects a substantial right if it is prejudicial, that is, if the appellant proves that there is a reasonable probability that he would have received a lighter sentence but for the district court's error. See Pirani, 406 F.3d at 552. The fact that an appellant was sentenced at the bottom of an erroneously calculated Guidelines range is not enough by itself to demonstrate a reasonable probability that he would have received a lighter sentence but for the error. See id. at 553; see also United States v. Grandison, 781 F.3d 987, 993 (8th Cir. 2015); United States v. Bain, 586 F.3d 634, 640 (8th Cir. 2009) (per curiam). Although an appellant is not required to prove by a preponderance "that but for [the] error things would have been different," United States v. Dominguez Benitez, 542 U.S. 74, 83 n.9 (2004), he must establish that "the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding," id. at 83; see also Bain, 586 F.3d at 640. But "where the effect of the error on the result in the district court is uncertain or indeterminate—where we would have to speculate—the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error." Pirani, 406 F.3d at 553 (citation omitted).

The government argues that Johnson cannot show that the error affected his substantial rights, because Johnson's ultimate sentence of 151 months was within the properly calculated Guidelines range that would have resulted without application of

---

[3]The Ellis panel also observed that "[i]nsofar as the Taylor panel thought the government could 'waive' plain-error review, the decision would be contrary to" our earlier decision in United States v. Bain, 586 F.3d 634, 639 n.4 (8th Cir. 2009) (per curiam), in which we observed that "[a] party's concession on the standard of review does not bind the court, as '[s]uch a determination remains for this court to make for itself.'" We have satisfied ourselves that the plain-error standard of review applies in this case.

the career-offender provision. We agree. Johnson's sentencing range after application of the career-offender provision was 151 to 188 months' imprisonment.  His sentencing range based on drug quantity and criminal history without application of the career-offender provision was 130 to 162 months.  The district court considered whether application of the career-offender provision overstated Johnson's criminal history and concluded that the 151- to 188-month range was reasonable "and that a variance [below that range] based upon overstatement of criminal history is not necessary or appropriate under this record."  In considering the § 3553(a) factors, the district court noted that Johnson's sentence was "substantially controlled by criminal history," but the court also expressed "great concern about the seriousness of the offense" and an "even greater concern . . . about the criminal history of the defendant, even apart from [the] career offender" provision, particularly given his "substantial history of violence."  The court concluded that a sentence of 151 months was "fully sufficient to address all of the sentencing considerations in this case."  Given the district court's stated concern about Johnson's extensive and violent criminal history and its refusal to grant a downward variance below 151 months, there is nothing in the record to suggest that the court would have imposed a sentence below 151 months had the Guidelines career-offender provision not been applied.  See, e.g., United States v. Ault, 598 F.3d 1039, 1042-43 (8th Cir. 2010) (concluding that there was no plain error where district court miscalculated Guidelines range because defendant failed to demonstrate a reasonable probability that sentence would have been lower but for error); cf. Grandison, 781 F.3d at 993 (vacating and remanding for resentencing because government conceded at oral argument that it would have recommended a lower sentence at the bottom of the correctly calculated Guidelines range and that district court would likely have accepted that recommendation).  In the circumstances of this case, any suggestion that Johnson was prejudiced by the alleged error would be speculative, and thus Johnson has not demonstrated a reasonable probability  that his sentence would have been lower but for the alleged error.  See Pirani, 406 F.3d at 553.

The sentence is affirmed.

_____